**Otto E. GOTTSCHLING, Complainant,**

**v.**

**SQUARE D COMPANY and Technical Engineers' Association, Respondents.**

Case No. 67–C–293.

United States District Court
E. D. Wisconsin.

July 22, 1969.

Alvin R. Ugent, Milwaukee, Wis., for complainant.

Robert K. Drummond, Milwaukee, Wis., for respondent Square D Co.

George F. Graf, Milwaukee, Wis., for respondent Technical Engineers' Assn.

REYNOLDS, District Judge.

## OPINION AND ORDER

Complainant, Otto E. Gottschling, originally brought this action before the Wisconsin Employment Relations Board. On petition of Square D Company (hereinafter "Square D") and Technical Engineers' Association (hereinafter "TEA" or "Association"), the action was removed to this court.

Complainant is seeking to compel arbitration by Square D, his former employer, and TEA, the union which represented him as an employee of Square D. Complainant seeks arbitration of a grievance which arose between complainant and Square D prior to his discharge. Complainant contends that such arbitration is required by the terms of the collective bargaining agreement then in effect between Square D and TEA.

Square D and TEA have moved for judgment on the pleadings pursuant to Rules 12(c) and 12(h) (2) of the Federal Rules of Civil Procedure and submitted a stipulation of documents to be considered in support therof. Accordingly, this motion is to be treated as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Respondents contend that complainant has failed to state a claim upon which relief can be granted because (1) complainant has no absolute right to arbitration of his grievance either under the contract or as a matter of law, and

(2) even if there is a right to arbitration, the merits of this particular grievance were in fact determined by an arbitrator when complainant's discharge was submitted to arbitration.

## FACTS

Otto E. Gottschling, a resident of Milwaukee, Wisconsin, was employed by Square D from August 1957 until December 8, 1966. Square D is a Michigan corporation engaged in the manufacture of electrical control and distribution equipment, and has a manufacturing facility located in Milwaukee, Wisconsin. TEA is a labor organization within the meaning of the National Labor Relations Act, as amended. At the time of complainant's employment by Square D, TEA was the representative of the collective bargaining unit in which complainant worked. Collective bargaining agreements between Square D and TEA were in full force and effect at all times material to this case.

On July 20, 1966, complainant was working on the second shift at Square D. This shift commenced at about 3:30 p. m. A general union meeting was scheduled by TEA in the early evening of July 20. Complainant's request for time off to attend the meeting was refused by the company. However, complainant attended the meeting in spite of the refusal of permission and, consequently, was given a one week disciplinary layoff by Square D.

A grievance contesting the validity of the disciplinary layoff was instituted by complainant on July 27, 1966. This grievance was processed through the three-step grievance procedure provided in the collective bargaining agreement. On November 7, 1966, TEA requested arbitration of the grievance.

On or about December 8, 1966, Square D discharged complainant for insubordination. Again a grievance was filed on the ground that the discharge was not for just cause. The grievance procedure was followed, arbitration was held, and the transcript of the arbitration proceedings has been filed with this court.

The arbitrator sustained the discharge on the ground that complainant's conduct over a lengthy period of time was insubordinate and constituted just cause for discharge. It is clear from the transcript that testimony was taken with regard to the disciplinary layoff of complainant by Square D on July 20, 1966, as well as several other incidents involving complainant's conduct on the job, which the arbitrator concluded established just cause for the discharge in December. The validity of the discharge was upheld by the Industrial Commission and the Wisconsin courts when complainant unsuccessfully sought unemployment compensation.

Jurisdiction of this court is based on § 301, Labor Management Relations Act, 29 U.S.C. § 185.

Complainant here is claiming that the TEA arbitrarily refused to process his grievance to arbitration, that arbitration was required by the contract, and that his grievance (a disciplinary layoff) is predicated upon a violation of the collective bargaining agreement by Square D. Consequently, this case falls within the scope of § 301 of the Labor Management Relations Act as interpreted by the United States Supreme Court in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L. Ed.2d 842 (1967).

Vaca v. Sipes, supra, makes it abundantly clear that federal courts have jurisdiction to hear an employee suit for breach of the collective bargaining agreement directed against both the company and the union. Specifically, the Supreme Court concluded that it is possible in a cause of action by the employee against the union and/or employer for breach of contract to assert that the union arbitrarily, discriminatorily, and in bad faith refused to process the employee's grievance, and that the facts upon which the grievance is based constitute a breach of the contract by the employer. The Supreme Court makes it equally clear that "If a breach of duty by the union and a breach of contract by the employer are proven, the court must fashion an appropriate reme-

dy" in a suit for breach of a collective bargaining agreement. Vaca v. Sipes, 386 U.S. 171, 187, 87 S.Ct. 903, 915 (1967).

It therefore appears that the first question to be considered is whether the terms of the collective bargaining agreement in question provide for arbitration of an employee grievance as a matter of right to the employee. If, of course, the contract makes this provision, a failure to arbitrate the grievance would be a breach of the collective bargaining agreement. If the contract does not provide for arbitration of a grievance as a matter of the employee's right, there may nonetheless be a breach of the duty of the union to fairly represent the employee.

## DOES THE COLLECTIVE BARGAINING AGREEMENT GIVE AN EMPLOYEE AN ABSOLUTE RIGHT TO ARBITRATION OF A GRIEVANCE?

Identical grievance procedure was provided in the 1965–66 and the 1966–67 collective bargaining agreements between Square D and TEA. Since the provisions are identical, it is unnecessary to determine which contract governs this dispute.

Step 1 of the grievance procedure provides for adjustment of a dispute as to the interpretation or application of the collective bargaining agreement between the aggrieved employee and his immediate supervisor. If no solution is reached at this stage, the grievance is reduced to writing, signed by the employee, and submitted to the immediate supervisor. The procedure then automatically moves to Step 2.

Step 2 involves discussion between the aggrieved employee, his steward, the Chairman of the Bargaining Committee if the steward requests his presence, the immediate supervisor involved, and the next level of company supervision. If no solution is reached at this stage, "the party desiring the move to the next step" must inform the other party and the grievance is then moved to Step 3.

Step 3 provides for adjustment of the dispute "Between the Chairman of the Bargaining Committee and representatives of management." There is no provision for including the aggrieved employee individually in this stage of the grievance procedure.

If the Chairman of the Bargaining Committee desires, he may ask a staff member of the TEA to assist in settling the grievance at this step. The contract allows proceeding from Step 3 to arbitration in the following manner:

"* * * If a satisfactory solution is not reached within five working days after receipt of the grievance from Step 2, either party may request arbitration. However, the grievance must be submitted to arbitration within 30 calendar days after the answer is given in Step 3."

On its face, the contract allocates the burden of pursuing the grievance to different persons at different stages of the grievance procedure. The burden is on the aggrieved employee to initiate the grievance in Step 1. If unsatisfied with the solution there reached, the employee may reduce the grievance to writing and thereby move the grievance to Step 2.

The grievance may be moved from Step 2 to Step 3 by any of several persons—the aggrieved employee, his steward, or the Chairman of the Bargaining Committee. However, once Step 3 is initiated, the burden of both settlement of the dispute and proceeding to arbitration shifts to the Chairman of the Bargaining Committee and the representatives of management.

There is absolutely no provision on the face of the contract by which the aggrieved employee, individually, may force the grievance to arbitration. No documents or affidavits have been submitted which suggest that the construction of the contract by the parties allows an aggrieved employee to compel arbitration of his grievance. The contract in no way requires or implies that all grievances must be submitted to arbitration; the provision for arbitration

states that the Chairman of the Bargaining Committee or the representatives of management *"may* request arbitration."

With respect to actual arbitration procedure, the collective bargaining agreement makes the following provisions:

"1. No grievance or dispute shall be presented for arbitration until the *Association or the Company* has availed itself of the full grievance procedure set forth in this agreement. Before submission of a grievance or dispute to arbitration, *the Company and the Association* shall attempt to agree and set forth in writing specifically the issue to be submitted to arbitration. * * *

"2. If arbitration is requested, a panel of seven (7) arbitrators shall be requested from the Federal Mediation and Conciliation Service. *The Company and the Association* shall alternate striking out names until one remains. The remaining one shall be the arbitrator.

*"The Company and the Association* shall meet as soon as convenient to both parties, but within fifteen calendar days after selection of the arbitrator so that the arbitrator can give all due consideration to the dispute and thereby render a decision. The decision of the arbitrator shall be binding upon both parties." (Emphasis added.)

The collective bargaining agreement further provides (1) that the Company and the Association shall each bear the cost of presenting its case to the arbitrator, (2) that the Association will not sanction any work slowdown or stoppage, and (3) that if such work slowdown or stoppage occurs, the Company may impose disciplinary action and will not hold the Association liable for damages as a result of such slowdown or stoppage.

These provisions appear in identical form in both the 1965 to 1966 and the 1966 to 1967 Labor Agreements between

Square D and TEA. All references in the arbitration provisions are to the "Association," the "Company," or "both parties." There is no reference in the arbitration procedure to the employee whose grievance may be the subject of the arbitration.

■ Consequently, I must conclude that the collective bargaining agreement here involved does *not* give an aggrieved employee an absolute right to arbitration of his grievance. The decision to request arbitration is, by the terms of the contract, allocated to the TEA and to Square D. The next question, therefore, is whether the decision by TEA not to arbitrate this grievance was a breach of the duty to fairly represent complainant.

## WAS THE FAILURE OF TECHNICAL ENGINEERS' ASSOCIATION TO COMPEL ARBITRATION OF THIS GRIEVANCE A BREACH OF DUTY OF FAIR REPRESENTATION TO PLAINTIFF?

■ In order to show a breach of the duty of fair representation by his union, the employee must show that the union acted arbitrarily, discriminatorily, or in bad faith in representing him. Vaca v. Sipes, 386 U.S. 171, 190, 87 S. Ct. 903, 17 L.Ed.2d 842 (1967). When this standard is applied to the union enforcement of the grievance and arbitration procedure of a collective bargaining agreement, it is not sufficient for the employee to show that his grievance, even though meritorious, was settled short of arbitration. Vaca v. Sipes, supra, at 192, 87 S.Ct. 903.

■ Assuming arguendo that the July 20, 1966, disciplinary layoff imposed by Square D on complainant for attending a union meeting during working hours in spite of specific refusal of permission to do so was a violation of the collective bargaining agreement, I do not believe any construction of the facts before this court establishes arbitrary, discriminatory, or bad faith conduct on

the part of TEA in failing to take this particular grievance to arbitration.

The complainant was laid off for one week beginning July 20, 1966. On July 27, 1966, plaintiff filed a written grievance protesting the disciplinary layoff. It is undisputed that the grievance was processed through all three steps of the grievance procedure, and no claim is made or facts alleged to support arbitrary, discriminatory, or bad faith delay in proceeding through the grievance procedure.

The collective bargaining agreement in effect at the time the grievance arose expired on September 30, 1966. On October 6, 1966, another collective bargaining agreement was signed by Square D and TEA. This agreement was in effect from October 1, 1966 to September 30, 1967.

On November 7, 1966, Art Wienke, Jr., one of the TEA signatories to the collective bargaining agreement, wrote Square D requesting arbitration of complainant's disciplinary layoff grievance. However, on December 8, 1966, complainant was discharged by Square D because of insubordination. Apparently a new grievance was filed with regard to the discharge and processed through the grievance procedure. On January 25, 1966, TEA requested arbitration of the discharge grievance. On February 28, 1967, prior to arbitration of the discharge grievance, complainant's attorney wrote TEA demanding further action on the arbitration of the disciplinary layoff grievance. TEA responded on March 6, 1967, that the delay in arbitration of the disciplinary layoff was due to the intervening discharge and arbitration pending on the discharge grievance.

A full arbitration hearing on the subject of complainant's discharge was held in April 1967. At this hearing, testimony was taken with regard to the history of complainant's conduct and attitude at work including, among other incidents, the incidents on July 20, 1966, and the resulting disciplinary layoff. On May 22, 1967, the arbitrator issued his decision in which he sustained the discharge. Because of numerous instances of insubordinate conduct by complainant, the arbitrator found the discharge was for cause. Among other facts in support of his conclusion, the arbitrator specifically found that:

"On July 20, 1966, the grievant deliberately disobeyed instructions from his supervisor by leaving work without authorization to attend a Union meeting. In this instance he had sought specific permission to attend the meeting. His request was denied by his supervisor. Under the agreement between the parties employees may leave work to attend union meetings only if they are officers of the Union or if they are 'called upon to transact business' for the association. The grievant was not an officer of the Union on July 20. Neither was he 'called upon' to transact any business for the association at the meeting. It appears that his reasons for wishing to attend were personal and related to his reassignment to the second shift. When he returned to his work after the meeting he was sent home and given a one-week suspension. * * *

\* \* \* \* \* \*

"The Union filed a grievance following this disciplinary action. It was discussed in preliminary stages but remained unresolved at the time another incident occurred on December 8, 1966. Subsequently it was withdrawn."

By no reasonable interpretation of these facts can the conduct of the TEA be characterized as arbitrary, discriminatory, or in bad faith. Complainant's only possible contention as to arbitrary conduct by TEA is the failure to submit the disciplinary layoff grievance to arbitration. There is no allegation of undue delay or arbitrary or discriminatory conduct in the union's processing of the grievance through the three steps of the grievance procedure. When the discharge of complainant occurred prior to selection of an arbitrator for the disci-

plinary layoff grievance, the TEA might well have been acting in bad faith had it ignored the discharge and proceeded to arbitrate a grievance involving, at most, one week's lost wages. TEA's decision to proceed with the discharge grievance and attempt to have complainant reinstated was certainly not a bad faith decision and was clearly in complainant's best interest at the time.

The decision not to proceed with the disciplinary layoff grievance after the discharge was upheld was neither arbitrary nor discriminatory. The testimony at the discharge hearing and the findings of fact by the arbitrator certainly gave TEA grounds to believe that the disciplinary layoff grievance was without merit.

The extensive testimony taken with regard to the disciplinary layoff, coupled with the facts found by the arbitrator concerning the layoff, clearly negate any possible inference of arbitrary, discriminatory, or bad faith conduct on the part of TEA in declining to submit to arbitration a matter already given an extensive hearing. Complainant has alleged no facts beyond the decision not to proceed to arbitration which could in any way support a conclusion of arbitrary, discriminatory, or bad faith conduct by TEA. There are no other facts in the record before this court which support the conclusion that TEA breached its duty of fair representation of complainant. It therefore appears that TEA is entitled to summary judgment dismissing the complaint as against TEA.

Since plaintiff has failed to allege facts which support the conclusion that TEA's conduct in declining to arbitrate his grievance was a breach of the duty of fair representation, it is self-evident that no possible cause of action for participation in the breach of duty of fair representation exists against Square D. Therefore, the question the court must now consider is whether Square D breached the collective bargaining agreement when it imposed the disciplinary layoff in question.

## DOES ANY INTERPRETATION OF THE FACTS BEFORE THE COURT ESTABLISH A BREACH OF THE COLLECTIVE BARGAINING AGREEMENT BY THE SQUARE D COMPANY?

■ Complainant claims his disciplinary layoff was the result of a breach of contract by Square D. The layoff was imposed because complainant left work to attend a general meeting of his union on July 20, 1966, although Square D specifically refused him permission to do so. Complainant contends that this refusal violates the following contract language:

> "Any member of the unit who may be called upon to transact business for or to participate in any activities of the association shall upon application to the proper representatives of the company be allowed to leave work for time sufficient to transact such business or to attend such meetings as may be necessary."

The transcript of the arbitration hearing held pursuant to the complainant's discharge clearly establishes that complainant was not an officer of the union and was not specifically called upon to transact any business for TEA at the meeting held July 20, 1966. Complainant has alleged no facts which suggest otherwise. Taking all of complainant's factual allegations as true, there are still no facts which suggest a conclusion contrary to that of the arbitrator who found that—

> "* * * Under the agreement between the parties employees may leave work to attend union meetings only if they are officers of the Union or if they are 'called upon to transact business' for the association. The grievant [complainant] was not an officer of the Union on July 20. Neither was he 'called upon' to transact any business for the association at the meeting. It appears that his reasons for wishing to attend were personal and related to his reassignment to the second shift. * * *"

It therefore appears that under no construction of the facts before this court can complainant's claim that Square D breached the contract by refusing to allow him to leave work to attend a union meeting be supported.

For all the foregoing reasons,

It is ordered that the motion of defendants, Square D Company and Technical Engineers' Association, for summary judgment dismissing the action of Otto E. Gottschling against them shall be and the same hereby is granted, and the action of Otto E. Gottschling against Square D Company and Technical Engineers' Association shall be and it hereby is dismissed.