Anthony S. **FABIAN**, Plaintiff,

v.

The **BALTIMORE AND OHIO RAIL-ROAD COMPANY** et al.,
Defendants.

No. C70-322.

United States District Court,
N. D. Ohio, E. D.

Oct. 27, 1970.

574

Bernard S. Goldfarb, Donald J. O'Connor, Cleveland, Ohio, for plaintiff.

John H. Ritter, Byron D. Fair, Cleveland, Ohio, for defendant, The Baltimore & Ohio Railroad Co.

James L. Highsaw, Jr., Washington, D. C., Harold A. Ross, Cleveland, Ohio, for defendant, Brotherhood of Railway, Airline and Steamship Clerks, etc.

## MEMORANDUM

BEN C. GREEN, District Judge.

This action was brought by the plaintiff, an employee of the defendant The Baltimore and Ohio Railroad Company (hereinafter B & O), against his employer and his union, the defendant Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (hereinafter BRAC). The basis of plaintiff's claim is that the defendants have conspired together "and by their concerted activity have wrongfully removed him from an active-duty status since October 16, 1967 until this date, except for two brief periods in 1968 and 1969", and that the defendant BRAC "has refused to process his grievance to the effect that he has been wrongfully removed from an active-duty status." This court is alleged to have jurisdiction over the subject matter under the Railway Labor Act, 45 U.S.C. § 151 et seq.

Each of the defendants has moved to dismiss the complaint or, in the alternative, for summary judgment. The motion of defendant BRAC is supported by an extensive affidavit with exhibits attached.

█ The issue raised by defendant B & O is whether this court has jurisdiction over the subject matter of the claim asserted against it.

Under the terms of the Railway Labor Act, 45 U.S.C. § 153, subd. 1(i), it does appear that plaintiff's claim against his employer is within the exclusive jurisdiction of the National Railroad Adjustment Board, and that this court has no authority to grant plaintiff relief thereon. Brotherhood of Railroad Trainmen v. Chicago River and Indiana Railroad Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); Transcontinental and Western Air v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325 (1953); Pacilio v. Pennsylvania Railroad, 381 F.2d 570 (CA 2, 1967).

Plaintiff, however, contends that the decision in Czosek v. O'Mara, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970) has created an exception to the exclusive administrative jurisdiction provided for in the Railway Labor Act, so as to permit the exercise of judicial authority herein. In that case, suit had been brought against a railroad, a union and certain union officials by a group of employees who had lost their jobs in a merger of two rail lines. The petition alleged that they had been wrongfully discharged by the employer, and that the union defendants had been "guilty of gross nonfeasance and hostile discrimination" in "arbitrarily and capriciously refusing to process claims" which alleged that the grievants had been improperly replaced by other employees in the course of the merger.

The posture of the action when it reached the Supreme Court was that:

The Court of Appeals held that the complaint was adequate to allege a breach by the union of its duty of fair representation subject to vindication in the District Court without resort to administrative remedies. Dismissal of the complaint against the railroad was affirmed; but on remand the individual respondents were to be granted leave to maintain their action against the railroad if they should choose to amend their complaint to allege that the employer was somehow implicated in the union's discrimination.

The Supreme Court agreed with the conclusion of the Court of Appeals that the railroad could be joined as a party to the suit if it was properly alleged that the discharges were as a consequence of the union's discriminating conduct, or that the employer was in any other way implicated in the union's alleged discriminatory action. However, the opinion further states that:

* * * we have no occasion to consider whether under federal law, which governs in cases like these, the employer may always be sued with the union when a single series of events gives rise to claims against the employer for breach of contract and against the union for breach of duty of fair representation or whether, as the Court of Appeals held, when there are no allegations tying union and employer together, the union is suable in the District Court for breach of duty but resort must be had to the Adjustment Board for a remedy against the employer.

It thus appears that the broad interpretation of Czosek v. O'Mara ascribed to it by plaintiff's counsel is not supported by the Supreme Court's holding. This Court agrees with the appellate ruling therein, O'Mara v. Erie Lackawanna R. Co., 407 F.2d 674 (CA 2, 1969), that the railroad may only be joined with the union based on a concert of action between the said parties bringing about the employee's discharge.

On this basis, the complaint does not state a claim for relief against defendant B & O cognizable by this Court. Although the complaint contains the gener-

al conclusory allegation that the defendants have "wrongfully conspired against plaintiff" and that his removal from active-duty status is by reason of "their concerted activity", there are no factual allegations to support those assertions. Consequently, the complaint must be viewed as alleging independent wrongs on the part of the two defendants.

■ Assuming, however, that the railroad may be sued with the union when a single series of events gives rise to claims against the employer for breach of contract and against the union for breach of duty of fair representation, the record herein still requires dismissal of the complaint against defendant B & O, for the reason that defendant BRAC's motion for summary judgment conclusively establishes that plaintiff has no claim against his union.

Plaintiff's claim against defendant BRAC is premised on the contention that the union was a participant in the actions which led to his being removed from active-duty status, has wrongfully prevented him from returning to active-duty status, and has refused to process his grievance to the effect that he has been wrongfully removed from an active-duty status.

■ As defendant's BRAC's motion is supported by an affidavit, with exhibits attached, under Rule 12(b) of the Federal Rules of Civil Procedure, it must be treated as a motion for summary judgment. Rule 56(e) of the Federal Rules provides that:

> * * * When a motion for summary judgment is made and supported [by affidavits] as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Plaintiff has submitted no opposing affidavit to that of defendant BRAC.

The affidavit submitted on behalf of defendant BRAC establishes that plaintiff was first removed from active-duty status by the B & O in October, 1967. That action was taken by the B & O for medical reasons, and was subsequent to disciplinary proceedings, conducted under the collective bargaining agreement, which had resulted in the imposition of minor disciplinary penalties. He was restored to service in February, 1968, but was again removed approximately six weeks thereafter, pending another medical investigation. He remained out of service until February, 1969, when he was restored to active-duty status on the recommendation of the railroad's Medical and Surgical Director. The plaintiff was again removed from active-duty service for medical reasons on or about October 17, 1969. At that time, the collective bargaining agreement had been amended to provide for the payment of sickness allowances to employees, covered by the agreement, absent on account of illness, and to supplement the benefits provided under the Railroad Unemployment Insurance Act. The plaintiff applied for, and received, such benefits.

Defendant BRAC's affidavit and exhibits disclose that the union fully cooperated with the plaintiff in endeavoring to secure his restoration to active-duty status following his removals in 1967 and 1968. The record further reflects that the union afforded the plaintiff representation at his disciplinary hearings in 1967, and is presently processing a grievance for plaintiff arising from a dispute over his failure to be awarded a different job position in 1969 on a seniority bid.

Following his removal from service in October, 1969, and his acceptance of railroad benefits, the plaintiff took no steps to protest that action until January 2, 1970. On that date the plaintiff wrote his Local Chairman, stating that he felt he had been unjustly dismissed from his position, and he requested a grievance hearing with the railroad. That letter was forwarded to the Gener-

al Chairman of the System Board of Adjustment of the BRAC, who had previously handled, and was familiar with, the plaintiff's disputes with the railroad.

On January 9, 1970, the plaintiff was advised by the General Chairman that the collective bargaining agreement did not provide for an investigation and hearing upon removal of an employee from service for medical reasons. He was further advised that his proper course was to obtain a statement from his personal physician that he was medically fit to work, forward the same to the railroad's Medical and Surgical Director, and if he was then not restored to active duty to "file a claim with the Superintendent, or request Division Chairman Brother Sarlouis to do so on your behalf, for restoration to service."

On January 19, 1970 plaintiff wrote the General Chairman, again requesting that a hearing be scheduled in his case and that representation be provided. The response to that letter repeated the information contained in the General Chairman's letter of January 9, 1970 as to the collective bargaining agreement provisions and the suggested appropriate action, and concluded:

> * * * I must point out that cases of this type are extremely difficult to overcome. In your case, Medical Officers have stated that you are unable to properly perform your assigned duties and it is this decision by such Medical Officers that must be overcome before our Committee can have you restored to active service. As you are aware, several hearings and investigations have been conducted during the past several years and Carrier's Medical Officer advises that it is your condition which has caused your inability to properly perform your work. You will also recall that, following your removal from service by B & O Medical Officer in October 1967, our Committee was successful in having you restored to service in February 1968. In March 1968, you were again removed from service by Medical Offi-

cers and again, at a later date, our Committee was successful in having you restored. Such events all serve to work against our attempts to restore you to service at this time and I urge that you obtain treatment for any disability that you may have in order that our Committee can approach Carrier's Medical Officer with a contention that you are no longer disabled and able to perform assigned clerical duties.

The pertinent provisions of the collective bargaining agreement, controlling between the railroad and union, are incorporated in defendant BRAC's affidavit. It appears therefrom that the General Chairman's construction of the agreement, as it pertained to the plaintiff's situation, is correct. It further appears that under the agreement the plaintiff had the right to request higher authority within the union to take a course of action different from that of the General Chairman, afforded by internal rights of appeal and internal remedies up through the International President of BRAC and from the International President to the Executive Council.

The plaintiff did not follow the advice of the General Chairman that he file a claim for restoration to service with the B & O, nor did he request his Division Chairman to do so. He also did not pursue his internal remedies within the union, although he had prosecuted such an appeal from a determination of the General Chairman in 1968. What the plaintiff did do was file this lawsuit on April 1, 1970.

Based on this record, the Court finds that defendant BRAC is entitled to summary judgment on the plaintiff's claim against it.

■ The record fully rebuts any contention that defendant BRAC has breached its duty of fair representation to the plaintiff. On the plaintiff's first two removals from service the union afforded him representation on his request for restoration to active duty, and was

able to secure his return. The union also afforded him representation on his early disciplinary hearings, and is presently handling his grievance concerning the seniority bid. The plaintiff has simply declined to follow the proper steps, which were successful on the two earlier removals, which would permit the BRAC to intercede on his behalf in the dispute concerning his removal from service in 1969.

As plaintiff has no grounds for relief against defendant BRAC, it follows that any attempt to assert jurisdiction over the B & O based on the railroad's joinder as a party defendant with the union must fail.

An order will be entered granting the motion of defendant B & O to dismiss the complaint as to it, and granting the motion of defendant BRAC for summary judgment in its favor.