LOWE *v.* HOTEL & RESTAURANT EMPLOYEES
UNION, LOCAL 705

OPINION OF THE COURT

1. LABOR RELATIONS—UNIONS—AGGRIEVED UNION MEMBER—EXHAUSTION OF REMEDIES.

An aggrieved union member must, as a general rule, exhaust his intra-union remedies before seeking judicial redress.

2. LABOR RELATIONS—UNIONS—AGGRIEVED UNION MEMBER—EXHAUSTION OF REMEDIES.

An aggrieved union member need not exhaust his intra-union remedies prior to seeking judicial redress where resort to those remedies would be ineffective, if not futile, or where the member alleged facts from which it may be reasonably inferred that the union has breached its duty of fair representation.

3. LABOR RELATIONS—UNIONS—FAIR REPRESENTATION.

The fiduciary duty of a union to fairly represent its members in the administration and enforcement of collective bargaining agreements is correlative to the right of the union to represent all the employees in a bargaining unit as their exclusive agent, despite opposition from a minority.

4. LABOR RELATIONS—UNIONS—FAIR REPRESENTATION—GOOD-FAITH REPRESENTATION.

Part of a union's duty of fair representation is to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 48 Am Jur 2d, Labor and Labor Relations § 334.
[3] 48 Am Jur 2d, Labor and Labor Relations § 276.
[4–11] 48 Am Jur 2d, Labor and Labor Relations § 273 *et seq.*
[12] 5 Am Jur 2d, Appeal and Review § 702 *et seq.*

5. LABOR RELATIONS—UNIONS—FAIR REPRESENTATION.

The doctrine of fair representation does not confer on a union member the absolute right to press his grievance all the way through the last stage of the grievance procedure as provided in the collective bargaining agreement; the union has the power and right to abandon processing of a grievance which it determines in good faith to be meritless and to settle disputes between the employer and the union member short of arbitration.

6. LABOR RELATIONS—UNIONS—FAIR REPRESENTATION—REFUSAL TO ARBITRATE.

Refusal of a union to take an employee member's grievance to arbitration does not *per se* amount to a breach of the union's duty of fair representation.

7. LABOR RELATIONS—UNIONS—FAIR REPRESENTATION—BREACH OF DUTY—BURDEN OF PROOF.

A union member who claims that his union breached its duty to fairly represent him in his grievance with his employer must show that the union's motivation was improper or hostile; the member must establish that the union's conduct toward him was arbitrary, discriminatory, or in bad faith.

8. LABOR RELATIONS—UNIONS—FAIR REPRESENTATION—BREACH OF DUTY.

To establish a union's breach of its duty of fair representation in processing a grievance, the complaining union member must demonstrate more than that his grievance, viewed with hindsight, had merit; lack of success in the redress of a grievance cannot be equated with bad faith representation.

9. LABOR RELATIONS—UNIONS—FAIR REPRESENTATION—BREACH OF DUTY.

The test to determine whether a union has breached its duty of fair representation is not success or failure, nor whether the grievance had merit, but rather whether the union dealt with its member's claim in a bad faith or arbitrary manner.

10. LABOR RELATIONS — UNIONS — FAIR REPRESENTATION DUTY — BREACH OF DUTY—EVIDENCE.

The union member's evidence, considered in the light most favorable to the member, did not establish a breach of the member's union's duty of fair representation when processing the member's grievance with his employer where the record shows that the member had been involved in an altercation with his super-

visor and was discharged, that the member had previously received two warning letters from the supervisor, a thorough investigation was made by the union after which the member was given numerous opportunities to present his version of the incident, and several union hearings and rehearings were held before the union decided not to press the grievance to arbitration, because there was no evidence showing that the decision of the union was made with hostility or dishonesty.

### Dissent by T. M. Burns, J.

11. LABOR RELATIONS—UNIONS—FAIR REPRESENTATION—BREACH OF DUTY—QUESTION OF FACT.

*A question of fact was created as to whether defendant union breached its duty to fairly represent the plaintiff union member in his grievance with his employer where, even though the record shows that the plaintiff was discharged by his employer because of an altercation with the plaintiff's supervisor and that the plaintiff had previously received two disciplinary letters, the record also shows that the plaintiff testified that he had not been in a fight with the supervisor, that he had brought the disciplinary letters to the attention of the union but that nothing had been done even though no cause existed for the letters' issuance, that at the various meetings with the union concerning his dismissal and grievance, he was given no consideration, and that he had been told by his employer that the employer and the union had decided together to discharge him; a jury verdict in plaintiff's favor should not be reversed because there was sufficient evidence to support such a verdict.*

12. APPEAL AND ERROR—JURY VERDICT—STANDARD OF REVIEW.

*An appellate court will not set aside a jury verdict unless the evidence preponderates in the opposite direction.*

Appeal from Wayne, Neal Fitzgerald, J. Submitted Division 1 May 4, 1971, at Detroit. (Docket No. 9513.) Decided September 27, 1971. Leave to appeal granted, 386 Mich 777.

Complaint by Richard Lowe against the Young Women's Christian Association for wrongful discharge, against the Hotel & Restaurant Employees Union, Local 705, and Myra Wolfgang for failure

to process his grievance in good faith, and against both the union and the YWCA for conspiring against him to deprive him of his employment. Judgment for plaintiff. Defendants union and Myra Wolfgang appeal. Reversed and remanded.

*Eddie D. Smith,* for plaintiff.

*Goodman, Eden, Robb, Millender, Goodman & Bedrosian,* for defendants Hotel & Restaurant Employees Union, Local 705, and Myra Wolfgang.

Before: V. J. Brennan, P. J., and J. H. Gillis and T. M. Burns, JJ.

J. H. Gillis, J.  Plaintiff Richard Lowe was a member of defendant Local 705, Hotel and Restaurant Employees Union, at the time he was employed as a maintenance man by the Young Women's Christian Association (hereafter referred to as YWCA). The terms of employment were controlled by the collective bargaining agreement between the employer and Local 705, among others.

Plaintiff was discharged in 1963 by the YWCA after an alleged altercation between him and a female supervisor. It was the personnel policy of the employer to dismiss employees who were involved in employment trouble after previously having received two disciplinary letters. Plaintiff received written disciplinary warnings on two separate occasions, in 1958 and 1962.

After his discharge, plaintiff filed a grievance with his union representative alleging that the employer had breached the collective bargaining agreement by discharging him. A union representative investigated the facts surrounding plaintiff's griev-

ance. The results of the investigation were reported to the union's Grievance Committee, and the committee concluded that plaintiff's discharge was for good cause. Plaintiff appealed to the union's Joint Executive Board, which affirmed the Grievance Committee's finding. Following denial of his grievance, plaintiff wrote an informal letter[1] to the general president of the international union. The response plaintiff received urged him to take his grievance back to the local union secretary-treasurer, Mrs. Myra Wolfgang, also a defendant herein.

Plaintiff then turned to the courts for relief. He commenced an action against the YWCA[2], the union, and Mrs. Wolfgang, alleging that he was wrongfully discharged, that the employer and union conspired against him to deprive him of his employment, and that the union failed to process his grievance in good faith.

At the close of plaintiff's proofs, the trial court granted a partial directed verdict in defendants' favor, GCR 1963, 515.1. The court ruled that plaintiff failed to establish a *prima facie* case of conspiracy. The issue of good faith representation went to the jury, and they returned an award of $7990 for plaintiff.

Defendants raise two issues on appeal. They first contend that the trial court erred in denying their motion for summary judgment, GCR 1963, 117.2(1). They argue that plaintiff failed to exhaust

---

[1] The union's constitution provides that appeals from local decisions can be taken to the general president, and in turn the president's decision may be appealed to the general executive board; this decision may be appealed to the convention of the international union. Constitution of the Hotel and Restaurant Employees and Bartenders International Union, of 1961, article 20, § 11. Plaintiff did not formally appeal the decision of the Joint Execuitve Board to the international union's general president.

[2] Plaintiff settled with the Young Women's Christian Association before the trial commenced.

his intra-union remedies before seeking judicial redress. The defense buttresses its argument with the settled doctrine that, generally, aggrieved union members must exhaust their union remedies before seeking judicial redress. This is likewise a substantial Federal and state law of collective bargaining. *Republic Steel Corporation* v. *Maddox* (1965), 379 US 650 (85 S Ct 614, 13 L Ed 2d 580); *Seay* v. *McDonnell Douglas Corporation* (CA9, 1970), 427 F2d 996; *Anderson* v. *Ford Motor Company* (ED Mich, 1970), 319 F Supp 134; *Mayo* v. *Great Lakes Greyhound Lines* (1952), 333 Mich 205; *Knox* v. *Local 900, UAW-CIO* (1960), 361 Mich 257.

However, narrow exceptions, when satisfied, have removed the complainant's cause of action from beneath the tutelage of the exhaustion doctrine. *Howland* v. *Local Union 306, UAW-CIO* (1948), 323 Mich 305; *Vaca* v. *Sipes* (1967), 386 US 171 (87 S Ct 903, 17 L Ed 2d 842).

This Court's holding in *Harrison* v. *Arrow Metal Products Corporation* (1969), 20 Mich App 590, *leave to appeal denied* (1970), 383 Mich 816, is dispositive. There, the majority held that the aggrieved employee

"must allege facts from which it may be reasonably inferred either that he duly exhausted his union remedies, or that resort to such remedies would be ineffective, if not futile, or that the union breached its duty of fair representation." *Harrison* v. *Arrow Metal Products Corporation, supra,* p 603.

Plaintiff, in his amended complaint, alleged that the employer and union conspired against him, and that the union breached its duty of fair representation. Despite the questionable adequacy of plaintiff's

complaint,[3] the trial court, once satisfied that plaintiff had stated a cause of action, did not err in accepting jurisdiction over this matter. *Vaca* v. *Sipes, supra,* at 186 (87 S Ct at 914, 17 L Ed 2d at 855); see also *Harrison* v. *Arrow Metal Products Corporation, supra,* 617–628 (J. H. Gillis, J., *concurring in part, dissenting in part*).

The heart of plaintiff's suit is rooted in his allegation that defendants breached their duty of fair

---

[3] The trial court, prior to trial, granted defendants' motion for summary judgment because plaintiff's complaint failed to state a cause of action, GCR 1963, 117.2(1). Plaintiff's original complaint was based solely upon conclusionary terms. Plaintiff amended his complaint to include the conspiracy count, and the trial court granted his motion for reinstatement solely upon the addition of this second count. After the close of plaintiff's proofs, the trial court granted defendants' motion for directed verdict on the conspiracy count, GCR 1963, 515.1. The court permitted plaintiff's case to go to the jury on the alleged breach of the duty of fair representation, *i.e.*, the count in plaintiff's original complaint which failed to state a cause of action. The court, in doing so, commented upon the scant amount of evidence:

"*The Court:* I don't think there is any question of conspiracy. But there may be a question of whether the union acted in good faith in what they did. I think that is a question for the jury. * * * I don't know what testimony there is. There isn't much testimony to go on. I mean, what is the jury going to consider when they get down to good faith? What is the bad faith, outside of the fact that the man lost his job?

"*Mr. Smith [counsel for plaintiff]:* The bad faith is, here is a man who has been employed for 14 years. He has been here a shop steward.

"*The Court:* But they have no obligation to take his word.

"*Mr. Smith:* They don't have the obligation—

"*The Court:* Isn't the whole thing going to come down to whose word the jury takes [when] they examine this thing?

"*Mr. Smith:* Yes.

"*The Court:* Unless you can prove that he had malice toward this man, or something of that sort. And there is no testimony of malice."

Plaintiff's complaint alleged insufficient facts to support its allegation of breach of the duty of fair representation. GCR 1963, 111.9; *Knox* v. *Local 900, UAW-CIO* (1960), 361 Mich 257, 259 260; *McCann* v. *Local 12075, UMW* (1967), 6 Mich App 720, 725; *Mandel* v. *Highway and Local Motor Freight Drivers Union* (SD NY, 1964), 246 F Supp 805; *Local 13, International Longshoremen's & Warehousemen's Union* v. *Pacific Maritime Association* (CD Calif, 1967), 278 F Supp 755, 766.

However, since the trial court let this case go to the jury, on the substantive issue, we feel constrained to now review that issue.

representation.  Plaintiff argues that he was discharged for insufficient cause, and furthermore that the union's investigation should have disclosed this. He concludes that the union failed to represent him in the utmost good faith when it refused to take his grievance to arbitration.

The fiduciary duty of fair representation in the administration and enforcement of collective bargaining agreements has been imposed upon unions by federal law.[4]  *Cortez* v. *Ford Motor Company* (1957), 349 Mich 108; *Brady* v. *Trans World Airlines, Inc.* (CA 3, 1968), 401 F2d 87, 94, *cert den* 393 US 1048 (89 S Ct 681, 21 L Ed 2d 691); *Sciaraffa* v. *Oxford Paper Company* (D Me, 1970), 310 F Supp 891, 901.  This obligation is correlative to the right of a union to represent all the employees in a bargaining unit as their exclusive agent, despite opposition from a minority.  *Bazarte* v. *United Transportation Union* (CA 3, 1970), 429 F2d 868, 871.  Similarly, the employee has made personal concessions to achieve collective solidarity.

"The employee has gained bargaining strength through representation by his union but has surrendered his right to make 'the law of the job,' and his interests are subordinated to those of the bargaining unit as a whole."  *Harris* v. *Chemical Leaman Tank Lines, Inc.,* (CA 5, 1971), 437 F2d 167, 171.

Part of a union's duty of fair representation is to "serve the interests of all members without hos-

---

[4] See:  *Vaca* v. *Sipes* (1967), 386 US 171 (87 S Ct 903, 17 L Ed 2d 842); *Humphrey* v. *Moore* (1964), 375 US 335 (84 S Ct 363, 11 L Ed 2d 370); *Ford Motor Company* v. *Huffman* (1952), 345 US 330 (73 S Ct 681, 97 L Ed 1048).  Also see generally, Lewis, "Fair Representation in Grievance Administration: *Vaca* v. *Sipes*", 1967 Supreme Court Rev 81; Cox, "Rights Under a Labor Agreement," 69 Harv L Rev 601 (1956).

tility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct", *Vaca* v. *Sipes, supra,* at 177 (87 S Ct at 910, 17 L Ed 2d at 850). In exercising its discretion, the union has the power "to sift out frivolous grievances, to abandon processing of a grievance which it determines in good faith to be meritless, and to settle disputes with the employer short of arbitration". *Harris* v. *Chemical Leaman Tank Lines, Inc., supra,* at 171. In so doing,

"the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. Through this settlement process, frivolous grievances are ended prior to the most costly and time-consuming step in the grievance procedures. Moreover, both sides are assured that similar complaints will be treated consistently, and major problem areas in the interpretation of the collective bargaining contract can be isolated and perhaps resolved." *Vaca* v. *Sipes, supra,* at 191 (87 S Ct at 917, 17 L Ed 2d at 858). Also see: *Encina* v. *Tony Lama Company* (WD Texas, 1970), 316 F Supp 239, 244.[5]

---

[5] It has been a long-standing principle of labor law that union action which is taken honestly and with deliberation will not be disturbed. *Humphrey* v. *Moore, supra,* at 355 (84 S Ct at 375, 11 L Ed 2d at 385); *Ford Motor Company* v. *Huffman, supra,* at 338 (73 S Ct at 686, 97 L Ed at 1057). This principle is cited with approval in *Brown* v. *Truck Drivers and Helpers Local Union No 355 of Baltimore, Maryland* (D Md, 1968), 292 F Supp 125, 128: *Ferrara* v. *Pacific Intermountain Express Company* (ND Ill, 1969), 301 F Supp 1240, 1244; *Bartels* v. *New York Lithographers and Photo-Engravers' Union No. One-P* (SD NY, 1969), 306 F Supp 1266, 1271; *aff'd* 431 F 2d 1205.

Furthermore, it is the policy of the Labor Management Relations Act, § 203(d), 61 Stat 153, 29 USCA § 173(d), to encourage that the final adjustment of disputes be resolved by the method settled upon by the parties. Therefore, unless the union is shown to have acted in bad faith, differences of opinion will be resolved in the union's favor. Anno: "Union-Failure to Process Grievances", 34 ALR 3d 884; and *Slagley* v. *Illinois Central Railroad Company* (CA 7, 1968), 397 F2d 546.

.

However, this doctrine of fair representation does not confer on an employee the absolute right to press his grievance all the way through the last stage of the grievance procedure, as that procedure is made possible in the collective bargaining agreement. *Vaca* v. *Sipes, supra,* at 190–193 (87 S Ct at 916–918; 17 L Ed 2d at 857–859). Refusal of a union to take the grievance to arbitration does not *per se* amount to a breach of the duty of fair representation. *Lomax* v. *Armstrong Cork Company* (CA 5, 1970), 433 F2d 1277, 1281. To allow an individual employee to compel arbitration of his grievance, regardless of its merit, would weaken and undermine the collective bargaining process. *Vaca* v. *Sipes, supra,* at 191 (87 S Ct at 917, 17 L Ed 2d at 858). The employee, therefore, is subject to the union's discretionary power to settle or even to abandon a grievance, so long as the union does not violate its duty of fair representation. *Brandt* v. *United States Lines, Inc.* (SD NY, 1964), 246 F Supp 982.

Consequently, the aggrieved employee who challenges a union's actions is obligated to demonstrate more than that his grievance, viewed with hindsight, had merit. *Vaca* v. *Sipes, supra,* at 193–195 (87 S Ct at 918, 919; 17 L Ed 2d at 859, 860); *Gottschling* v. *Square D Company* (ED Wis, 1969), 301 F Supp 1349, 1353. Rather, a breach of the statutory duty of fair representation is established only when the union's conduct toward the complaining employee has been shown to be arbitrary, discriminatory, or in bad faith. *Vaca* v. *Sipes, supra,* at 190 (87 S Ct at 916, 17 L Ed 2d at 857). It is therefore essential to plaintiff's claim that there should have been proof of "arbitrary or bad faith conduct on the part of the union in processing his

grievance". *Vaca* v. *Sipes, supra,* at 193 (87 S Ct at 918, 17 L Ed 2d at 859). Plaintiff carries a strong burden of proof, and this necessitates a showing that the union's motivation was improper or hostile.[6] *Field* v. *Local 652, UAW AFL-CIO* (1967), 6 Mich App 140. Accord: *Hardcastle* v. *Western Greyhound Lines,* (CA 9, 1962), 303 F2d 182; *Turley* v. *Hall's Motor Transit Company* (MD Pa, 1969), 296 F Supp 1183, 1187; *St. Clair* v. *Local Union No. 515 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America* (CA 6, 1969), 422 F2d 128, 132; *Simberlund* v. *Long Island R. Co.* (CA 2, 1970), 421 F2d 1219, 1224.

Here, the proofs considered in the light most favorable to plaintiff showed that he had been involved in an altercation with a female supervisor and that on two previous occasions he had received

---

[6] Whether the aggrieved employee has been treated in a fair and impartial manner depends, to some extent, upon the actor's motivation. For a further discussion see Cox, "The Duty of Fair Representation," 2 *Villanova L Rev* 151 (1957). An inquiry into defendant's motivation has also been a prerequisite to a finding of breach of the duty of fair representation in numerous cases.

It is not enough that the defendant union has acted improperly, the union must have acted with malice or hostility. *DeArroyo* v. *Sindicato De Trabajadores Packinghouse, AFL-CIO* (CA 1, 1970), 425 F2d 281, 284. Accord: *Brady* v. *Trans World Airlines, Inc.* (CA 3, 1968), 401 F2d 87, 104, *cert den* 393 US 1048 (89 S Ct 680, 21 L Ed 2d 691); *Bruen* v. *Local 492, International Union of Electrical, Radio and Machine Workers, AFL-CIO* (D NJ, 1969) 313 F Supp 387, 392, *aff'd* 425 F2d 190; *Balowski* v. *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO* (CA 6, 1967), 372 F2d 829, 834; *Meola* v. *Bethlehem Steel Company* (1967), 246 Md 226 (228 A2d 254); *Guille* v. *Mushroom Transportation Company* (1967), 425 Pa 607 (229 A2d 903). However, if a grievance which has merit is ignored or handled in a perfunctory manner, this may constitute a breach of the duty to fairly represent. *Vaca* v. *Sipes, supra,* at 194 (87 S Ct at 919, 17 L Ed 2d at 860). Consequently, negligence coupled with improper motivation could amount to a breach of duty. *St. Clair* v. *Local Union No. 515 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America* (CA 6, 1969), 422 F2d 128, 130; *Seay* v. *McDonnell Douglas Corporation* (CA 9, 1970), 427 F2d 996, 1000. Therefore, *Sims* v. *United Papermakers & Paperworkers, AFL-CIO* (1970), 26 Mich App 129, should be read cautiously.

warning letters.  A thorough investigation was made by the union, after which, plaintiff was given numerous opportunities to present his version of the incident.  Several union hearings and re-hearings were held before the union decided not to press the grievance to arbitration.

Aggrieved employees should not equate lack of success with bad faith representation.  *Acuff* v. *United Papermakers and Paperworkers* (CA 5, 1968), 404 F2d 169, 171.

The test is not success or failure, or whether the grievance had merit, but rather whether the union breached its duty of fair representation by dealing with plaintiff's claim in a bad-faith or arbitrary manner.  The evidence introduced at trial falls short of this test.  *Bieski* v. *Eastern Automobile Forwarding Company* (CA 3, 1968), 396 F2d 32, 37; *Watson* v. *International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America* (CA 5, 1968), 399 F2d 875, 880; *Fabian* v. *Baltimore and Ohio R. Co.* (ND Ohio, 1970), 320 F Supp 573.

Nowhere in the record are we able to find evidence that the union acted arbitrarily or in bad faith. Instead, this record rebuts plaintiff's contentions. The record shows the union pursued plaintiff's grievance vigorously, and that it was only after a complete investigation of the facts surrounding plaintiff's discharge that the union took the position not to further act on the grievance.  The decision not to demand arbitration does not amount to an abuse of the union's discretion.[7]  Plaintiff failed to

---

[7] Even if plaintiff's grievance is now seen to be meritorious, it is not the function of a court to make such an inquiry.  Rather, it is incumbent upon plaintiff to plead and prove that the union treated his grievance in an arbitrary, discriminatory, or bad-faith manner, regardless of the grievance's merit.  *Vaca* v. *Sipes, supra,* at 192, 193 (87 S Ct at 917, 918; 17 L Ed 2d at 859); *Simberlund* v. *Long Island Railroad Company* (CA 2, 1970), 421 F2d 1219, 1225; *Bowen*

advance evidence that this position was taken dishonestly and with hostility. From our review of the record, we conclude that the union acted "upon wholly relevant considerations, [and] not upon capricious or arbitrary factors". *Humphrey* v. *Moore,* (1963), 375 US 335, 350 (84 S Ct 363, 372; 11 L Ed 2d 370, 382).

Since there is insufficient proof to support the verdict, the judgment of the trial court is vacated and this case is remanded with direction to take proceedings not inconsistent herewith.

Reversed and remanded.

V. J. BRENNAN, J., concurred.


T. M. BURNS, J. (*dissenting*). The majority does not deny that the trial court properly accepted jurisdiction in this cause. Rather, they hold that plaintiff failed to establish that the union breached its duty of fair representation.

It is, of course, essential to plaintiff's cause that he prove that the union's conduct was arbitrary or in bad faith. *Vaca* v. *Sipes* (1967), 386 US 171, 193 (87 S Ct 903, 918; 17 L Ed 2d 842, 859). However, whether a union is guilty of such conduct depends upon the facts of each case.[1]

Plaintiff testified that he had not been in any fight but that he merely held the arm of the woman involved to keep from being struck himself. He also testified that he had brought the previous warn-

---

v. *Lockheed-Georgia Company* (ND Ga, 1970), 309 F Supp 1210, 1213; *Gottschling* v. *Square D Company* (ED Wis, 1969), 301 F Supp 1349, 1353; *Wheeler* v. *Brotherhood of Locomotive Firemen and Enginemen* (D SC, 1971), 324 F Supp 818, 828; *DeMarco* v. *Thatcher Furnace Company* (1968), 102 NJ Super 258 (245 A2d 773).

[1] *Trotter* v. *Amalgamated Association of Street Electric Railway* (CA 6, 1962), 309 F2d 584.

ing letters written by his employer to the attention
of the union but that nothing had been done about
them despite the fact that he had given the YWCA
no cause to issue said letters.   Plaintiff also testified
that at his various meetings with the union he was
given no consideration and further that he had been
told by the Executive Director of the YWCA that
the YWCA and the union had decided together to
discharge him.   Plaintiff's testimony, if true, would
establish conduct on the part of the union amount-
ing to a breach of the union's duty of fair repre-
sentation.[2]

Admittedly, there was evidence on the other side.
However, this framed the question of fact for the
jury and they, after viewing the witnesses and hear-
ing all of the evidence, found for the plaintiff; this
Court does not set aside jury verdicts unless the
evidence preponderates in the opposite direction.
*Totok* v. *Elfstrom* (1966), 4 Mich App 705, 709.

It is my opinion that there is sufficient evidence,
if believed by the jury, to support the verdict
rendered.   Accordingly, I would affirm the trial
court.

---

[2] Such conduct on the part of the union would be sufficient to
establish a hostile discrimination against the plaintiff.   This the
union may not do.   See *Trotter* v. *Amalgamated Association of Street
Electric Railway, supra,* at 586.