Frank **FERRARA** et al., Plaintiffs,

v.

**PACIFIC INTERMOUNTAIN EXPRESS COMPANY, a Nevada corporation, and Local 705, International Brotherhood of Teamsters, etc., Defendants.**

No. 67 C 1493.

United States District Court
N. D. Illinois, E. D.
June 27, 1969.

Paul E. Flaherty, Donald J. Parker and Michael L. Igoe, Gann, McIntosh, Stead & O'Shaughnessy, Chicago, Ill., for plaintiff.

Arnold L. Burke, Axelrod, Goodman & Steiner, Chicago, Ill., for defendant P.I.E.

Sheldon M. Charone, Sherman Carmell and Harvey I. Levinson, Carmell & Charone, Chicago, Ill., for defendant Local 705.

## MEMORANDUM OPINION

DECKER, District Judge.

In May 1966 two trucking companies merged. All States Freight, Inc., be-came a part of the surviving Pacific Intermountain Express Company. Both before and after the combination, truck drivers for the companies were represented by Local 705 of the International Brotherhood of Teamsters. Under the respective collective bargaining agreements, each company had its own seniority list which defined the truckers' rights vis-a-vis the other drivers employed by that corporation. After the merger, these two lists had to be integrated in some manner.

The surviving corporation and Local 705 negotiated extensively concerning the seniority issue. Unable to reach a consensus, they then submitted the question to arbitration and to a Joint Grievance Committee. Concluding that the corporate acquisition was a "buy out" rather than a "merger," both the grievance committee and the arbitrator placed the entire list of All States' drivers below the drivers for P.I.E. The All States drivers therefore instituted this suit, claiming that (1) P.I.E., as the successor to the liabilities and duties of All States, breached the collective bargaining agreement between the drivers and All States, and (2) the union violated its statutory duty of fair representation.

Both the employer and Local 705 have now moved for summary judgment, maintaining that the testimony and exhibits adduced before the Joint Grievance Committee establish that there is no genuine issue for trial. F.R.Civ.P. 56(e) provides that when such a motion is made,

"an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

Since plaintiffs have failed to furnish detailed facts or other evidence supporting their allegations, summary judgment is appropriate. See, e. g., Crest Auto Supplies, Inc. v. Ero Manufacturing Co., 360 F.2d 896, 902 (7th Cir. 1966); Bal-

owski v. International Union, United Auto, Aerospace and Agr. Implement Workers of America (U.A.W.), 372 F.2d 829, 835 (6th Cir. 1967).

Two successive collective bargaining agreements are involved. An initial contract governed labor relations from January 1, 1964 to March 31, 1967, while a later one, executed about July 18, 1967, determined the parties' relationship between April 1, 1967 and March 31, 1970. The aggrieved drivers rely upon the 1964–67 agreement, emphasizing article 8, section 1 which stated that:

> "Employee seniority * * * shall prevail for all purposes and in all instances. Seniority shall be broken only by discharge for just cause, voluntary resignation or more than two (2) years layoff."

Although the corporate combination was consummated in May 1966, the drivers' seniority rights were not affected until the terminals were physically merged in September 1967. Plaintiffs' causes of action therefore accrued during the 1967–70 collective bargaining agreement and are subject to its provisions. Article 8, section 7 of the current contract specifically provides that:

> "When operations of bought-out company are merged with operations of the buyer: In the event an Employer buys out another Employer and merges the operations of the bought-out Employer into his own, those employees of the bought-out Employer who are employed by the acquiring

Employer will begin to accrue seniority with the new Employer and the beginning of such employment."

By industry practice, trucking firms' combinations are classified as either "buy-outs" or "mergers." In the latter type of acquisition, seniority is dovetailed on a one-for-one basis,[1] but in a "buy-out" the drivers of the acquired company uniformly go to the bottom of the seniority list of the acquiring firm. In cases of disagreement, both the 1964–67 and the 1967–70 collective bargaining agreements established a two-step arbitration procedure. First, the disagreement is submitted to one representative of each side. If not settled, the controversy is then considered by a Joint Grievance Committee composed of five employer representatives and five union representatives. The decision of the committee is "final and binding upon the parties."

Initially, P.I.E. contended the acquisition was a "merger," and Local 705 claimed it was a "buy-out." Unable to agree at their meeting, the parties submitted the controversy to a single arbitrator, Judge Joseph Burke, who decided against the plaintiffs. The Joint Grievance Committee then met and ratified Judge Burke's holding on March 17, 1967.[2]

Since the union had not supported their position, the plaintiffs instituted this lawsuit. In April 1969, immediately prior to trial, P.I.E. and Local 705 agreed to present again the controversy to a Joint Grievance Committee. Ac-

---

1. Thus, each driver's seniority would be compared to the others' length of service, without regard to which company originally employed the driver. If the seniority lists were meshed in this manner, the plaintiffs would be more favorably situated than they are at present.

2. Plaintiffs maintain that the procedure was irregular because an outside arbitrator was utilized. But the dispute obviously had to be resolved somehow. In a related factual situation, Humphrey v. Moore, 375 U.S. 335, 347, 84 S.Ct. 363, 370, 11 L.Ed.2d 370 (1964), declared that:

"The power of the Joint Conference Committee over seniority gave it power over jobs. It was entitled under § 5 to integrate the seniority lists upon some rational basis * * *."

The committee's March 1967 decision to follow past industry practice constituted a rational basis for adjusting seniority. Thus, assuming arguendo that the 1964–67 collective bargaining agreement is applicable to this controversy, P.I.E. is entitled to summary judgment because the Joint Grievance Committee determined that under the contract plaintiffs' seniority was properly subordinate to that of the P.I.E. drivers.

cordingly, the committee met on April 1, 1969. Notice of the meeting was given to all interested drivers. Assisted by counsel, both plaintiffs and defendants called witnesses and introduced evidence.[3] The committee unanimously ruled that the acquisition was a "buy-out" rather than a "merger."[4]

■ Since the Joint Grievance Committee's decision is binding on P.I.E. and Local 705, the employer's motion for summary judgment must be granted. Obligated to enforce arbitration awards, the federal courts may not substitute their judgment for that of the arbitrators. See, e. g., United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); I. A. M. District No. 8, A.F.L.–C.I.O. v. Campbell Soup Co., 406 F.2d 1223 (7th Cir. 1969). Each of the plaintiffs' contentions was thoroughly considered by the committee. After hearing all the evidence, the arbitration committee determined that the acquisition was a "buy-out," that the 1967–70 collective bargaining agreement governs the drivers' dispute, and that the plaintiffs were not entitled to the seniority preference sought in this lawsuit. As declared in Humphrey v. Moore, 375 U.S. 335, 350–351, 84 S.Ct. 363, 372, 11 L.Ed.2d 370 (1964):

> "The Dealers employees [plaintiffs] * * * have not yet suggested what they could have added to the hearing by way of facts or theory * * *.
>
> "* * * Neither the parties nor the Joint Committee exceeded their power under the contract. * * * The decision of the committee, reached after proceedings adequate under the agreement, is final and binding upon the

parties, just as the contract says it is."

■ Apparently conceding that they have no cause of action under the 1967–70 agreement, the plaintiff drivers next contend that their 1964–67 seniority rights were vested. The All States drivers overlook several recent decisions which hold that seniority rights are subject to alteration with each successive collective bargaining agreement. See, e. g., Schick v. N. L. R. B., 409 F.2d 395, decided by the Seventh Circuit on April 3, 1969; Local 1251 International Union of United Automobile, Aircraft and Agricultural Implement Workers of America UAW v. Robertshaw Controls Co., 405 F.2d 29 (2nd Cir. 1968); Charland v. Norge Division, 407 F.2d 1062 (6th Cir. 1969); Oddie v. Ross Gear & Tool Co., 305 F.2d 143, 149 (6th Cir. 1962). Compare Local Lodge 2040, Intern. Ass'n of Machinists, A.F.L.–C.I.O. v. Servel, Inc., 268 F.2d 692 (7th Cir. 1959). In the Schick case, the Seventh Circuit explained that:

> "Seniority rights are not vested, but 'derive their scope and significance from union contracts' * * * Thus, seniority is a valid subject matter for the collective bargaining process." At page 398 of 409 F.2d.

Thus, the 1964–67 agreement only protected plaintiffs' seniority while that contract was in force, and any rights it created expired in March 1967.

Since the Joint Grievance Committee's interpretation of the 1967–70 collective bargaining agreement is binding upon the parties and this court, the employer will be granted summary judgment.

■ Alternatively, the All States drivers assert that Local 705 violated its

**3.** To protect plaintiffs' rights, the union agreed that: (1) it would not participate in the selection of the union members of the committee nor be represented on the committee, (2) it would pay five of the plaintiffs their lost wages if they wished to attend the hearing, and (3) a stenographic record of the meeting would be maintained and provided free of charge to the All States drivers. A copy of the transcript has been submitted in support of the motion for summary judgment.

**4.** Furthermore, the committee considered plaintiffs' allegation that the defendants had agreed in June 1966 to dovetail the seniority lists on a one-for-one basis. The evidence indicated that no such understanding had been reached. Rather, the list was posted by mistake.

statutory duty of fair representation because its position that the acquisition was a "buy-out" conflicted with their interests.[5]

Except for their conclusionary pleadings, however, the plaintiffs have not indicated any bad faith or discriminatory treatment by the union.[6] Whenever a single union must balance the interests of two competing factions, it will necessarily offend one of them. Thus, in Humphrey v. Moore, 375 U.S. 335, 349–350, 84 S.Ct. 363, 372, 11 L.Ed.2d 370 (1964), the Supreme Court explained that:

> "Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes. Nor should it be neutralized when the issue is chiefly between two sets of employees. Conflict between employees represented by the same union is a recurring fact. To remove or gag the union in these cases would surely weaken the collective bargaining and grievance processes."[7]

The mere fact that Local 705 disagreed with plaintiffs does not establish lack of fair representation. In determining whether the acquisition was a "buy-out" or a "merger," the union's attorneys considered all previous acquisitions and relevant Interstate Commerce Commission decisions. The testimony before the Joint Grievance Committee indicates that the union's position was both reasonable and taken in good faith, based on past industry practice. In a related factual context, the Supreme Court recently held that:

> "In administering the grievance and arbitration machinery as statutory agent of the employees, a union must, in good faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances. * * * There was no evidence that any Union officer was personally hostile to Owens [the plaintiffs] or that the Union acted at any time other than in good faith. Having concluded that the individual employee has no absolute right to have his grievance arbitrated under the collective bargaining agreement at issue, and that a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious, we must conclude that that duty was not breached here."

Vaca v. Sipes, 386 U.S. 171, 194–195, 87 S.Ct. 903, 919, 17 L.Ed.2d 842 (1967). Since the plaintiffs have not countered the union's evidence with affidavits or facts indicating bad faith or arbitrary treatment, Local 705's motion for summary judgment must be granted.

In conclusion, P.I.E. did not breach either the 1964–67 collective bargaining agreement or the 1967–70 contract. Each agreement provided that disputes should be resolved by a Joint Grievance Committee whose decision would be fi-

---

5. Although plaintiffs rely upon Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed. 2d 842 (1967), the Supreme Court there concluded that:

> "[W]e do not agree that the individual employee has the absolute right to have his grievance taken to arbitration * *." 386 U.S. 191, 87 S.Ct. 917.

Unlike the union in Vaca, Local 705 pursued the instant controversy to arbitration, twice asking impartial umpires to decide the dispute.

6. In paragraph 18 of the complaint, the drivers object to several procedural aspects of the 1967 decision by Judge Burke. Since the April 1969 hearing before the Joint Grievance Committee jealously protected plaintiffs' rights, the alleged previous aberrations are now moot.

7. *Compare* Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953):

> "Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion."

nal. Two different committees concluded that the corporate acquisition of All States was a "buy-out," such that neither contract protected plaintiffs' seniority rights. Justifiably relying upon past industry practice, Local 705 similarly determined that the All States drivers should be placed at the bottom of the P.I.E. seniority list. The union's action was reasonable and taken in good faith.

Accordingly, I have entered an order today granting summary judgment for each of the defendants.