Garland L. RUCKER, Jr., Plaintiff–Appellant,

and

Jack T. Miller; Raymond L. Combs; Dale Hull; Gale McIntyre; James Wendt; and Charles E. Miller, Plaintiffs,

v.

The ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, a corporation; the Southern Pacific Transportation Company, a corporation; and the International Brotherhood of Locomotive Engineers, Defendants–Appellees.

No. 88–2330.

United States Court of Appeals, Tenth Circuit.

April 10, 1990.

---

Louis Michael Thrasher, Lincoln, Neb., for the plaintiffs-appellant.

Robert S. Bogason (Gary A. Laakso and Barbara S. Sprung, San Francisco, Cal., and Mark L. Bennett, Jr., of Bennett, Dillon & Callahan, Topeka, Kan., with him on the brief), San Francisco, Cal., for defendants-appellees St. Louis Southwestern Ry. Co. and Southern Pacific Transp. Co.

Harold A. Ross (John C. Frieden, of Frieden & Forbes, Topeka, Kan., with him on the brief), of Ross & Kraushaar Co., L.P.A., Cleveland, Ohio, for the defendant-appellee Intern. Broth. of Locomotive Engineers.

Before TACHA and McWILLIAMS, Circuit Judges, and CHRISTENSEN, District Judge.*

TACHA, Circuit Judge.

The plaintiffs are seven locomotive engineers who are former employees of the bankrupt Chicago, Rock Island, and Pacific Railway, current employees of one defendant, the St. Louis Southwestern Railway Co. ("SLSW")[1] and union members of the defendant International Brotherhood of Locomotive Engineers ("BLE"). The plaintiffs appeal the district court's grant of summary judgment dismissing their claims against the SLSW, the SPT, and the BLE. We affirm.

---

* The Honorable A. Sherman Christensen, United States District Court for the District of Utah, sitting by designation.

1. The SLSW is a wholly owned subsidiary of the defendant Southern Pacific Transportation Company ("SPT"). The district court in its opinion assumed the arguments applying to the SLSW also applied to the SPT, and we do likewise.

In a thorough and well-reasoned opinion, the district court ruled that (1) plaintiffs' claim that the SLSW violated federal law by contravening an Interstate Commerce Commission ("ICC") order which required the SLSW to follow a prior agreement governing the labor rights of Rock Island employees as a condition for purchasing a Rock Island rail line should be dismissed on primary jurisdiction grounds; (2) the six-month statute of limitations barred the plaintiffs' seniority rights claims; and (3) summary judgment on the plaintiffs' breach of the duty of fair representation claim should be granted in favor of the BLE.

After reviewing *de novo* these rulings of the district court, we affirm for the reasons expressed in the district court's memorandum and order attached hereto.

In the United States District Court for the District of Kansas

Garland L. Rucker, et al., Plaintiffs,

vs.

St. Louis Southwestern Railway Company, a corporation, et al., Defendants.

Case No. 83–4262

May 17, 1988

MEMORANDUM AND ORDER

Plaintiffs in this case are seven locomotive engineers and former employees of the Chicago, Rock Island and Pacific Railway (hereinafter, Rock Island). The Rock Island went bankrupt and plaintiffs are now employees of the defendant, St. Louis Southwestern Railway Company (hereinafter, SSW), a wholly-owned subsidiary of the defendant Southern Pacific Transportation Company (hereinafter, Southern Pacific). Obviously, defendants SSW and Southern Pacific are railroad companies. The other defendant in this case is the International Brotherhood of Locomotive Engineers (hereinafter, BLE), the union of which plaintiffs are members.

This case centers upon the protection of labor rights following the bankruptcy of the Rock Island and the acquisition of trackage or track rights from Santa Rosa, New Mexico to Kansas City, Missouri and from Kansas City, Missouri to St. Louis, Missouri. Prior to the Rock Island bankruptcy, SSW and Southern Pacific moved freight from the West Coast to St. Louis over a line that stretched from El Paso, Texas to Corsicana, Texas, northeast through Pine Bluff, Arkansas and then east and north to St. Louis. This is called the Corsicana line. After the bankruptcy, SSW received approval to purchase the Rock Island trackage from Santa Rosa, New Mexico, north and east through Kansas to St. Louis, Missouri. This is called the Tucumcari line. The track between Kansas City and St. Louis, however, was in such poor shape that it was not used by SSW. So, freight bound from the West Coast to St. Louis continued to travel over the Corsicana line, which was 400 miles longer than the Tucumcari line.

After the Union Pacific Railroad applied for merger with the Missouri Pacific Railroad, the SSW requested the Interstate Commerce Commission (hereinafter, ICC) to grant SSW track rights over a portion of the Missouri Pacific line stretching from Kansas City to St. Louis. This would allow the defendant railroads to employ a shorter route for freight moving between St. Louis and the West Coast without spending huge sums of money to rehabilitate the Tucumcari line between Kansas City and St. Louis. The ICC approved this request. After January 5, 1983, freight from the West Coast to St. Louis was moved by defendant railroads over the Tucumcari line to Kansas City and then over the Missouri Pacific tracks to St. Louis. Of course, the route was reversed for traffic moving west from St. Louis to the West Coast.

Under the law, conditions for the protection of labor rights are placed upon track acquisitions. 49 U.S.C. § 11347. As regards the acquisition of the Tucumcari line, the ICC found that an agreement dated March 4, 1980 between various railroads and various unions, including the parties to this case, afforded the labor protection re-

quired by law. Under the March 4th agreement, defendant railroads were required to give preference to former Rock Island employees "on appropriate seniority rosters" for additional manpower requirements resulting from the purchase of Rock Island trackage.

The March 4th agreement was not self-implementing. A later agreement, dated December 12, 1980, was reached between the SSW and the BLE, which gave all former Rock Island employees system seniority dating to March 24, 1980 for matters related to the Tucumcari line. It also gave former Rock Island workers "prior rights" to jobs in their "home district" on the Tucumcari line. "Home districts" were portions of the Tucumcari line designated by the Rock Island and carried forward by the SSW. The use of prior rights allowed former Rock Island engineers to have preference for jobs in their home district over other employees with longer system seniority.

As regards the acquisition of track rights over the Missouri Pacific line from Kansas City to St. Louis, the ICC imposed the so-called "Burlington Northern conditions" to protect the labor rights of affected employees. These conditions called for the railroad and the union to reach an agreement for the selection of the work force to handle rail traffic altered by the transaction. But, if no agreement was reached, either party could submit the dispute to arbitration.

Prior to the use of the Missouri Pacific track rights, only former Rock Island engineers worked traffic on the Tucumcari line. In November 1982, the SSW announced its intention to divert traffic from the Corsicana line to the Tucumcari line and over the Missouri Pacific tracks. This started on January 6, 1983. Together with the diversion of rail traffic, the SSW moved eleven engineers from SSW's Corsicana route to the Tucumcari route. Plaintiffs objected to this arguing that any work on the Tucumcari route should be reserved solely for former Rock Island employees. No agreement could be reached between the SSW and the BLE members on this issue. So, the SSW chose to submit the matter to arbitration.

Plaintiffs filed the instant lawsuit and tried to enjoin the arbitration. This court refused to issue an injunction against the arbitration. Eventually, the arbitrator approved a version of an implementing agreement negotiated between the SSW and a representative of the BLE. Under this agreement, some SSW engineers were transferred to the Tucumcari line.

Plaintiffs allege that the defendant railroads have violated the March 4th agreement and, therefore, federal law, by conspiring with the BLE to prefer SSW employees to the detriment of former Rock Island employees. Plaintiffs further allege that the defendant BLE has violated its duty of fair representation by participating in the conspiracy. This conspiracy was capped off, according to plaintiffs, when the railroads and the BLE submitted substantially similar proposals to the arbitrator—proposals which had been rejected previously by former Rock Island employees. In support of their conspiracy claims, plaintiffs contend that it was financially favorable to the railroads to continue to employ SSW employees for the diverted traffic instead of paying unemployment benefits to SSW employees, as well as new salaries to former Rock Island employees. Plaintiffs further contend that Mr. B. R. Parker, the BLE General Chairman in charge of negotiations with the railroads, was a SSW employee who favored his associates with the SSW over former Rock Island workers.

This case is now before the court upon two long-pending motions for summary judgment—one on behalf of SSW and one on behalf of BLE.[1] The court assumes the

---

1. There are other motions pending or under advisement in this case. Plaintiffs' motion for leave to file a denial of defendants' statements of uncontroverted facts (Doc. No. 139) is granted. The court has under advisement a motion for class certification which is rendered moot by the outcome of the summary judgment motions. Also pending is a motion to review an order by the U.S. Magistrate granting the defendant railroads leave to amend their answer to

arguments in favor of the SSW apply as well to Southern Pacific. The standards governing summary judgment are well-established and shall not be repeated here.

██ Both motions advance the doctrine of primary jurisdiction as grounds for summary judgment. Under this doctrine, the court may decline jurisdiction over a case involving issues that an administrative agency has the expertise and opportunity to evaluate. See *Englehardt v. Consolidated Rail Corp.*, 594 F.Supp. 1157 (N.D. N.Y.1984) *aff'd per curiam*, 756 F.2d 1368 (2d Cir.1985). The court believes this argument provides good grounds for dismissing the claims against both railroad companies. Plaintiffs contend that this case simply requires a straightforward construction and enforcement of the ICC order making the March 4th agreement a condition of SSW's purchase of the Tucumcari line. The court does not believe the matter is so clear. We doubt that the March 4th agreement contemplated the necessary labor protective conditions when a diversion of traffic results from *two* transactions—the purchase of the Tucumcari line *and* the acquisition of the Missouri Pacific track rights. Of course, the latter transaction was approved in a separate ICC order. The reconciliation and application of the two ICC orders to the situation at hand is a task better suited to the expertise of the ICC. In similar cases, the doctrine of primary jurisdiction has been applied to dismiss actions arising from the merger of rail operations. *Zapp v. United Transportation Union*, 727 F.2d 617 (7th Cir.1984); *Englehardt v. Consolidated Rail Corp., supra.* Therefore, we believe summary judgment may be enforced against plaintiffs' action against the railroads under the doctrine of primary jurisdiction.[2]

While a similar argument might be persuasive as regards plaintiffs' unfair representation claim (see *Zapp v. United Transportation Union, supra,* 727 F.2d at 628 n. 18), given the wide latitude afforded the union as explained later in this opinion, the court does not believe it is necessary to resolve the construction and application of the March 4th agreement and the ICC orders to decide the claim against the BLE.

██ Both motions for summary judgment also raise a statute of limitations argument that has some merit in the court's estimation. Defendants assert that a six-month limitations period governs this case under the holding of *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). There, the Supreme Court held that a six-month limitations period applied to a suit alleging that an employer violated a collective bargaining agreement and that a union violated its duty of fair representation in handling the plaintiff's claims against the employer. The Tenth Circuit applied the *DelCostello* holding in *Barnett v. United Airlines, Inc.*, 738 F.2d 358 (10th Cir.) *cert. denied*, 469 U.S. 1087, 105 S.Ct. 594, 83 L.Ed.2d 703 (1984), where it enforced the six-month limitations period in an action alleging that an employer misadjusted the plaintiff's seniority level in violation of a collective bargaining agreement and that plaintiff's union acted in bad faith in processing plaintiff's grievance. *DelCostello* has also been applied in railroad cases where employees have made claims against their employer and their union involving seniority rights under collective bargaining agreements and ICC orders. *Englehardt v. Consolidated Rail Corp., supra; Sisco v. Consolidated Rail Corp.,* 732 F.2d 1188, 1192–93 (3d Cir.1984). Plaintiffs assert that a two-year statute of limitations (49 U.S.C. 11706(c)(1)) for complaints filed before the ICC applies or a

assert a statute of limitations defense (Doc. No. 143). The court finds that the Magistrate's order is neither clearly erroneous nor an abuse of discretion. The order is affirmed. A motion to consolidate this case with Case No. 83–6025, *Volkman v. United Transportation Union,* shall be denied. Finally, a motion to review an order of the U.S. Magistrate directing sanctions

against plaintiffs shall be considered in a separate order.

2. To the extent plaintiffs' action is considered a challenge of the arbitrator's decision, subject matter jurisdiction is also inappropriate under the holding of *United Transportation Union v. Norfolk and Western Railway Co.,* 822 F.2d 1114 (D.C.Cir.1987).

five-year limitations period (K.S.A. 60–511) for Kansas contract actions is applicable.

We believe the six-month limitations period should be applied in this case. In *Del-Costello*, the Court specifically declined to borrow a state statute of limitations for a "hybrid" breach of contract/fair representation lawsuit. Therefore, the analogy to state law suggested by plaintiffs should be rejected. The case authority for a two-year statute of limitations (*Modin v. New York Central Co.*, 650 F.2d 829 (6th Cir.) cert. denied, 454 U.S. 967, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981)) is distinguishable from this case because there, no duty of fair representation claim was made against a union. In any case, because of this court's holding upon the primary jurisdiction argument, the claim against the BLE deserves this court's primary attention at this stage. As to this claim, it appears certain that a six-month limitations period must be applied.

Plaintiffs knew or should have known of the seniority rights negotiated in the December 12, 1980 agreement more than six months before this lawsuit was filed. There appears to be no genuine dispute as to this point. Plaintiffs could have brought suit when they became aware of the agreement. There is no colorable claim that they were misled into sitting on their rights. Therefore, this aspect of plaintiffs' suit, the system seniority afforded to former Rock Island employees hired by SSW, is not a timely issue for consideration. Nor would it appear to be timely if a two-year limitations period was controlling.

As regards the transfer of SSW engineers to the Tucumcari line, however, the BLE's negotiations with the railroads continued at least through April 1983. The court believes there is evidence to support plaintiffs' claim that they were not aware that the BLE had "abandoned" plaintiffs' interests until these negotiations were completed and the matter was being prepared for arbitration. This revelation may have fallen within the six-month limitations period. Therefore, summary judgment against the unfair representation claim cannot be predicated upon the statute of limitations argument.

■ Nevertheless, the court shall grant summary judgment in favor of the BLE because we do not believe a triable issue exists as to plaintiffs' claims against the BLE. A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is "arbitrary, discriminatory, or in bad faith." E.g., *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). A wide range of reasonableness must be allowed a statutory bargaining representative in situations where the union is faced with conflicting interests within its organization. *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). Evaluated by this standard, plaintiffs' evidence can in no way be viewed as supporting an actionable claim for relief against the BLE.

■ The court finds nothing arbitrary, discriminatory, or hostile about a decision advocating the transfer of SSW engineers to the Tucumcari line after the acquisition of the Missouri–Pacific track rights made the diversion of rail traffic from the SSW's Corsicana line economical. It was not unreasonable to consider the rearrangement of the labor force under the Burlington Northern conditions. These conditions were prescribed by the ICC as a requirement for the ICC's approval of the acquisition of the Missouri Pacific track rights. The acquisition of the track rights resulted in the displacement of SSW engineers who had manned traffic diverted from the Corsicana line. Although plaintiffs contend the preference granted former Rock Island employees by the March 4th agreement is controlling, it was not unreasonable or discriminatory to conclude that the subsequent ICC order imposing the Burlington Northern conditions took precedence over the earlier order regarding the purchase of the Tucumcari line and, therefore, that the interests of the SSW engineers had to be considered as part of the transaction. Nor was it unreasonable, arbitrary or discriminatory to permit SSW engineers who had lost work due to the diversion of rail traffic

to follow their work to another district. This practice is consistent with general principles of the BLE as contained in its Constitution and Standing Rules. (Depositions of C. Miller at 116 and J. Systma at 101–02.)

Plaintiffs cannot establish a genuine issue of fact regarding their unfair representation claim on the basis of their opposition to the BLE's position (assuming the BLE took a position contrary to plaintiffs' interests), the ties of Mr. Parker to SSW employees, or the provisions of the March 4th agreement. The BLE's position on the transfer of SSW engineers was necessarily adverse to some of its members. It could not please everybody. This does not mean its representation was unfair or in bad faith. See *Humphrey v. Moore, supra.* Summary judgment against fair representation claims has been granted in analogous cases (including one from this district) involving merging work forces where it was claimed that a union sided against a group of its members in grievance proceedings. *Bernard v. McLean Trucking Co.,* 429 F.Supp. 284 (D.Kan.1977); *Ferrara v. Pacific Intermountain Express Co.,* 301 F.Supp. 1240 (N.D.Ill.1969). The ties of the BLE General Chairman, Mr. Parker, to SSW workers is also not sufficient to create a genuine issue of fact in light of the other circumstances indicating the reasonableness of the BLE's position—namely, the Burlington Northern conditions and the BLE's constitution and bylaws. Furthermore, it is undenied that two different union representatives, not Mr. Parker, represented the BLE at the hearing before the arbitrator. These representatives may not have argued against transferring some Corsicana route engineers. But, this can be considered evidence of the reasonableness of Mr. Parker's conduct. Finally, the application of the March 4th agreement to the situation at hand is sufficiently uncertain that it is reasonable as a matter of law to conclude that there was no mandate granting all work on the Tucumcari line to former Rock Island employees when traffic was diverted to the Tucumcari line by reason of the acquisition of Missouri Pacific track rights.

On the basis of the above-stated reasoning and authority, the court shall grant summary judgment to defendant BLE.

In conclusion, summary judgment for all defendants is granted. Plaintiffs' motions at Doc. Nos. 143 and 36 are denied. Plaintiffs' motion at Doc. No. 139 is granted.

IT IS SO ORDERED.